# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EUGENE HUNTER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | Civil Action No. 10-89 (RMC) |

## MEMORANDUM OPINION

Eugene Hunter moves for a Judgment of Reversal against Defendant Michael J. Astrue, Commissioner of Social Security, arguing that Defendant's final administrative decision fails to be supported by substantial evidence and is erroneous as matter of law. In the alternative, Plaintiff moves the Court, pursuant to 42 U.S.C. § 405(g), to remand the case back to the Social Security Administration for a new administrative hearing. Defendant opposes Plaintiff's motion, and moves for Judgment of Affirmance, arguing that Defendant's decision is supported by substantial evidence and is free of legal error. The Court agrees with Defendant, and will therefore grant Defendant's Motion for Judgment of Affirmance and deny both Plaintiff's Motion for Judgment of Reversal and Plaintiff's alternative Motion to Remand pursuant to 42 U.S.C. § 405(g).

## I. FACTS

Plaintiff is a fifty-year old man who resides in Washington D.C. *See* Pl.'s Mem. in Support of Mot. for J. of Reversal [Dkt. # 15] at 1–2. On February 22, 2007, Plaintiff suffered a right tibial plateau fracture, and the next day underwent open reduction and internal fixation surgery,

followed by a regimen of physical therapy. *Id.* Plaintiff has not been employed since this injury in 2007. *Id.* Prior to that time, Plaintiff was employed as an assistant manager for a U-Haul facility, and prior to that, he was employed as a manager for both Greyhound and Consumer Value Stores ("CVS"). *Id*. at 2. Plaintiff has a high school education and no additional training. *Id*. at 2.

On August 15, 2007, based upon his tibial fracture, Plaintiff filed for Supplemental Security Income Benefits pursuant to the Title XVI of the Social Security Act. *Id*. at 1. Plaintiff's claim was denied, and then denied once again upon reconsideration. *Id*. On April 22, 2008, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id*. at 2. On September 14, 2009, a hearing was held, and on September 23, 2009, Plaintiff's claim was again denied by the ALJ in a written decision. *Id*. Plaintiff requested review by the Appeals Council, and on November 9, 2009, it concluded that there was no basis for granting such a review. *Id*.

## II. LEGAL STANDARDS

### A. Standard of Review

Judicial review in Social Security cases is statutorily limited to determining whether the findings of the Commissioner are supported by substantial evidence. 42 U.S.C. § 405(g); *Brown v. Bowen*, 794 F.2d 703, 705 (D.C. Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

### B. Process to Determine Whether Individual is Considered "Disabled"

"Disabled" under the Social Security Act is defined as "the inability to engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added).

> For purposes of determining whether a person is disabled under (d)(1)(A), [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A). Under the statute, a "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). As such, "[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require." 42 U.S.C. § 423(d)(5)(A).

To determine whether an individual is "disabled" under the standard above, a five-step evaluation process is employed. *See* 20 C.F.R. §§ 416.905, 416.920. If an individual is found not disabled at any step, then movement to the next step is unnecessary. *Id*. at § 416.920(a)(4). First in the five-step process is determining whether an individual is engaged in substantial gainful work. *Id*. at § 416.920(a)(4)(i). If so, the individual is deemed not to be disabled, despite any medical evidence or other contraindications. *Id*. at § 416.920(b). Second, if not gainfully employed, an individual must have a severe impairment to be considered disabled. *Id*. at § 416.920(c). If an individual does not have a severe impairment (or multiple impairments) that last for a continuous twelve months, that individual does not have a disability. *Id*.; *see also* § 416.909 (requisite duration of disability is twelve consecutive months). Third, if an "impairment" suffered

by an individual is of requisite duration and is listed in the Commissioner's regulations, or is equal to an impairment listed in the Commissioner's regulations, then the individual is considered disabled. *Id*. at § 416.920(d). If an individual's impairment does not meet or equal a listed impairment, a residual functional capacity assessment will be conducted based upon relevant medical and other evidence, which will be utilized in the next two steps to determine the breadth and type of work the impairment might exclude or not exclude. *Id*. at § 416.920(e). Fourth, utilizing the functional capacity assessment, an individual who, though suffering from an "impairment," is capable of performing work that he or she has done in the past is deemed not to be disabled. *Id.* at § 416.920(f). Fifth, if the individual is unable to do past relevant work, an analysis will be conducted as to whether, considering the individual's functional capacity and vocational factors such as age, education, and work experience, the individual is capable of performing other work that exists in significant numbers in the national economy. *Id.* at § 416.920(g); *see also* § 416.960(c). If the individual has the residual functional capacity to perform other work, the individual will be deemed not disabled; if the individual does not have such capacity to perform other work, the individual will be deemed disabled. *Id.*

### III. ANALYSIS

"In a disability proceeding, the ALJ 'has the power and the duty to investigate fully all matters in issue, and to develop the comprehensive record required for a fair determination of disability.'" *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989) (quoting *Diabo v. Sec'y of HEW*, 627 F.2d 278, 281 (D.C. Cir. 1980)). Plaintiff argues that the ALJ abandoned his duty to develop the record, which resulted in a decision that was not supported by substantial evidence. More specifically, Plaintiff argues that the ALJ (1) failed "to obtain pertinent medical evidence;" (2)

failed to "inquire into the Plaintiff's mental illness, despite the fact that the Plaintiff has alleged depression and mental stress in his Disability Report, and reported that he had been receiving psychiatric treatment;" and (3) failed to "adequately pursue or inquire into the Plaintiff's abilities to sit, stand, walk, lift, carry, or bend, or to perform any of the exertional requirements of work." Mot. for J. of Reversal [Dkt. # 15] at 5–6 (citations omitted).

The record does not support Plaintiff's assertions. The ALJ properly went through the five-step analysis, determining (1) that Plaintiff was not gainfully employed; (2) that he does have a severe impairment; (3) that the impairment is not listed or equal to a listed impairment within the Commissioner's regulations; (4) that he cannot perform past relevant work; and (5) that, despite not being able to do past relevant work, he could perform other work that exists in significant numbers in the national economy. In doing so, the ALJ obtained and reviewed all pertinent medical records, inquired into Plaintiff's mental health, and considered Plaintiff's exertional limitations.

First, the ALJ did not fail "to obtain pertinent medical evidence." Mot. for J. of Reversal [Dkt. # 15] at 5. The ALJ considered an abundance of pertinent medical records, including operative reports on Plaintiff's surgery from Providence Hospital, Admin. Record [Dkt. # 12], Ex. 1F; medical reports for his physical therapy, *id.*, Ex. 2F; a request for medical advice from Dr. Karen Sarpolis, M.D., *id.*, Ex. 3F; medical evidence from Dr. Easton L. Manderson, M.D., Admin. Record [Dkt. # 13], Ex. 4F; a consultative examination report by Dr. Rafael A. Lopez, M.D., *id.*, Ex. 5F; a request for medical advice from Internist Lisette Hanna, *id.*, Ex. 6F; and a physical residual functional capacity assessment from Dr. Jacqueline McMorris, M.D., *id.*, Ex. 7F. Having listed all of these records to Plaintiff as records which he did consider, the following examination occurred:

ALJ: Now, are there other documents there that you have that I don't have?

> Pl.: No. I would just like to draw attention to Exhibit 1F of --
> ALJ: Okay.
> Pl.: -- of the medical record.
> ALJ: Okay. But as far as you know, I have all the Exhibits?
> Pl.: Yes.
> ALJ: Okay, that's fine.

Admin. Record [Dkt. # 6], Transcript of Oral Hearing ("Tr.") at 15.[1] Later, the ALJ asked Plaintiff: "Is there another -- any other documents that you'd like to have me revisit?," to which Plaintiff responded "No." *Id*. at 19. When the ALJ inquired into other pertinent medical evidence, he was told by Plaintiff that no other medical evidence existed. Moreover, given the breadth of the medical evidence dealing with Plaintiff's specific impairments, the ALJ could not be on notice that other records might be available, without Plaintiff's assistance in identifying any additional pertinent medical evidence that might exist. Further, Plaintiff does not indicate, or attach to his pleading, additional medical evidence that should have been obtained. The comprehensive nature of the medical record, along with Plaintiff's assurance that no other medical evidence existed, suffice to show the record was developed sufficiently and that the ALJ did not fail to obtain medical evidence.

Second, the ALJ did not fail to "inquire into the Plaintiff's mental illness, despite the fact that the Plaintiff has alleged depression and mental stress in his Disability Report, and reported that he had been receiving psychiatric treatment." Mot. for J. of Reversal at 5. The ALJ specifically stated "[t]here's no mental impairment involved, and he's not asserting mental impairment," and then questioned Plaintiff "[t]hat's my understanding, right?" Tr. at 23. Plaintiff responded "Yes, in the duration of time." *Id*. Plaintiff therefore acknowledged he was not claiming any mental impairment. Again, Plaintiff's own assurances that mental impairment was not an issue in this case

---

[1] The transcript numbers correspond to the number at the top of each transcript page.

suffice to show the record was developed sufficiently in this regard and that the ALJ did inquire into whether Plaintiff was affected by mental illness.

Third, the ALJ did not fail to "adequately pursue or inquire into the Plaintiff's abilities to sit, stand, walk, lift, carry, or bend, or to perform any of the exertional requirements of work." Mot. for J. of Reversal at 5. While Plaintiff may not like the ALJ's conclusion concerning Plaintiff's exertional limitations and abilities, he nevertheless set forth substantial evidence supporting his conclusion, including his evaluation of Plaintiff's abilities to sit, stand, walk, lift, carry, bend, or perform any other exertional requirements of work. In doing so, the ALJ considered Plaintiff's self-reporting of his limitations and abilities, as well as the medical evidence. Admin. Record [Dkt. #6] at 11–13 ("ALJ Hearing Decision").[2] Specifically, the ALJ considered (1) Plaintiff's reported activities of daily living, including preparing meals, household chores, driving, shopping, and many more activities, *id*. at 11–12; (2) various operational and physical therapy records, *id*. at 12; (3) the medical reports of numerous doctors, *id*. at 12–13; (4) the residual functional capacity analysis, *id*. at 13–14; and (5) Plaintiff's age, education, and work experience, *id*. at 13–14. The record is replete with evidence of Plaintiff's exertional capabilities.

Though replete, such evidence was not always consistent. The ALJ noted discrepancies between the medical evidence and Plaintiff's self-reported physical assessment, thereby requiring the ALJ to decide which evidence to credit, and with what weight, for his determination as to Plaintiff's exertional capability. The ALJ found:

> that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however the

---

[2] The ALJ Hearing Decision pages correspond to the number at the bottom right of the pages.

> claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

*Id*. at 11. The ALJ did what every judge does when facing conflicting evidence; he made a credibility determination based upon the evidence presented to him.

Furthermore, that credibility determination about Plaintiff's abilities to "sit, stand, walk, lift, carry, or bend, or to perform any of the exertional requirements of work" was supported by substantial evidence. The ALJ placed considerable weight on (1) the medical report of Dr. Lopez, who noted that Plaintiff exhibited almost a full range of motion, and who found no evidence of atrophy, swelling, effusion, deformity, tenderness, spasm, heat, redness, thickening, instability, or tendinopathy; and (2) the residual functional capacity analysis of Dr. McMorris, who determined that Plaintiff has the ability to work, with some limitations. *Id*. at 12–13. The ALJ placed great weight on these records because both doctors' assessments were consistent with the other evidence presented. *Id*.

While the ALJ did not pursue additional evidence, it is not clear what additional evidence could be presented, and how such evidence would differ from that already presented. At the hearing, Plaintiff stated that there was no additional medical evidence, Tr. at 15, 19, and Plaintiff's complaints as to his exertional limitations were already documented within the record. *See generally* Admin. Record [Dkt. # 11]. The ALJ did pursue and inquire into the evidence already in the record, as shown by his analysis and incorporation of Plaintiff's exertional capabilities into his determination whether Plaintiff could manage to work in a less physical position. When questioning the vocational expert as to whether employment might be available for Plaintiff, the ALJ

set forth a hypothetical for the expert to consider that described Plaintiff's limitations:

> [cannot] climb ladders, ropes, or scaffolds . . . be exposed to hazardous heights, or hazardous machinery, or exposure to extreme temperature changes . . . [but] could occasionally climb stairs and ramps, and balance, and stoop, and crouch; no kneeling or crawling . . . [with moderate pain level] . . . no lower-extremity use of pull/push controls, no prolonged walking and standing . . . ."

Tr. at 23–24. Assuming those exertional limitations and abilities, the ALJ extended the hypothetical to include various levels of "sit and stand" limitations, in which the most restrictive example given, without being disabled, was "sit and stand at the discretion of the employee." Even under that most restrictive level, while considering the other limitations, the vocational expert found that jobs were available in the national economy that would accommodate Plaintiff's impairment. The ALJ incorporated Plaintiff's exertional limitations within his analysis, and even assumed them to be at a most restrictive level, and nonetheless found that Plaintiff was not disabled because he could be employed in an unskilled, sedentary job that exists in significant numbers in the national economy.[3] ALJ Hearing Decision at 14.

       The ALJ performed a thorough analysis of Plaintiff's functional capabilities, considering Plaintiff's own testimony and medical records, the residual functional assessment, and a host of medical evidence, weighing each against each other, assigning credit to some, and not to others. The record was sufficiently developed from this evidence to determine Plaintiff's exertional capabilities, and thus the ALJ did not fail to adequately pursue or inquire into the Plaintiff's abilities to perform any of the exertional requirements for work.

---

[3] Further proof that the ALJ pursued and inquired into Plaintiff's limitations was the ALJ's decision at step four, where he determined that Plaintiff could not be employed doing past relevant work, as it was too strenuous for Plaintiff. *See* ALJ Hearing Decision at 13. This necessarily requires recognition of Plaintiff's exertional limitations.

## IV. CONCLUSION

The ALJ developed a suitable record for a determination of whether Plaintiff was disabled and made his decision based upon sufficient evidence. For the foregoing reasons, the Court will grant Defendant's Motion for Judgment of Affirmance [Dkt. # 16], and deny Plaintiff's Motion for Judgment of Reversal and its alternative motion to remand pursuant to 42 U.S.C. § 405(g) [Dkt. # 15]. The decision of the ALJ will be affirmed. A memorializing Order accompanies this Memorandum Opinion.

Date: December 1, 2010                              /s/
                                        ROSEMARY M. COLLYER
                                        United States District Judge